UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL ACTION 05-00345-KD-C |
| | ) | |
| STEPHEN EUGENE RUSSO, | ) | |
| KENNETH DAVID WALL, | ) | |
| LAURENCE PETER SUTLEY | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the following: defendant Crystal McDonald Russo's ("Crystal Russo") "Motion to Dismiss Counts Twenty-Seven, Twenty-Eight and Thirty of the Second Superseding Indictment" (Doc. 166); defendant Steve Eugene Russo's ("Russo") "Motion to Dismiss Counts Twenty-Seven, Twenty-Eight and Thirty of the Second Superseding Indictment" (Doc. 170); defendant Laurence Peter Sutley's ("Sutley") "Motion to Dismiss Counts Twenty-Seven, Twenty-Nine and Thirty-One of the Second Superseding Indictment" (Doc. 171), and the government's response thereto (Doc. 204). [1]

Defendants Crystal Russo, Russo and Sutley move the Court, pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure to dismiss Counts Twenty-seven (27), Twenty-eight

---

[1] In substantially similar motions, defendants Russo, Sutley and Crystal Russo moved the Court to dismiss counts Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty and Thirty-One of the Second Superceding Indictment. Due to the similarity of the motions, the government has filed a collective response.

(28), Twenty-Nine (29), Thirty (30) and Thirty-One (31) [2] of the second superseding indictment on the grounds, in sum, that the transfers of money allegedly made by defendants did not as a matter of law violate either 18 U.S.C. 2232(a) or 18 U.S.C. 1512(c)(2).  (Docs. 166, 170, 171)

*Counts Twenty-Eight & Twenty-Nine (18 U.S.C. §1512(c)2))* [3]

Counts Twenty-Eight and Twenty-Nine allege, in sum, that defendants Sutley, Russo and Crystal Russo "corruptly obstructed, influenced and impeded an official proceeding and attempted to do so..." by transferring monies from a bank account subject to forfeiture. (Doc. 144 at 26-27) Defendants move for dismissal on the grounds, in sum,  that  "some kind of physical

---

[2] The counts allege, in sum, that upon learning of the first superceding indictment issued on March 31, 2006, which included a forfeiture of property count, the defendants transferred money from one account to another in the same bank. Specifically, Mr. Russo is alleged to have transferred $95,719.01 from his account in the Vision Bank to a new account opened in Mrs. Russo's maiden name (Crystal McDonald) in the same bank; Mrs. Russo is alleged to have several days later attempted to withdraw money from the new account but was informed that the account was frozen. Co-defendant Sutley is alleged to have transferred $66,717.25 from a corporate account held in the name of American Hot, LCC (a company that is named in other counts of the indictment), to an account held in the name of Jim Brown, Inc. This transfer was, like the Russo's, made within the same Vision Bank.

[3] Section 1512, entitled "Tampering with a witness, victim, or informant", provides in relevant part:

(c) Whoever corruptly--

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c)(2).

change or act of concealment of evidence must be alleged and shown" and that no such allegation appears in Counts Twenty-Eight or Twenty-Nine of the Second Superceding Indictment.  Specifically, defendants contend that neither the funds nor the location of the funds were in any manner altered or concealed by the transfer and there is no evidence of the existence or location of the money in the Vision Bank accounts was in any way affected.  In addition, defendants note that the word "transfer" does not appear as an actus reus in § 1512(c) as it does in § 2232(a).  This argument is unavailing because whether the funds were altered or concealed is clearly a factual issue to be determined by the jury.  Moreover, the charge tracks the language of the statute and is thus sufficient.

Defendants further argue that Congress did not intend to permit the use of § 1512(c) either as an alternative to, or as an additional charge to that available under 18 U.S.C. §2232(a).  In support, defendants rely, in part on United States v. Plavcak, 411 F.3d 655, 658-59 (6th Cir. 2005) wherein defendants maintain the government recognized the impropriety of alleging violations of § 2232(a) and the obstruction provisions of 18 U.S.C. §1503 premised on the same conduct by dismissing the latter.  The court notes that, contrary to defendants' assertion, there is no indication in the opinion that the government dismissed the obstruction charge because it was improperly asserted.  Plavcak does not support defendants' assertion.  The court finds no merit to the defendants' argument.

Defendants also argue that the government's attempt to invoke this witness/evidence tampering law is defeated by its failure properly to allege a violation of § 2232(a). Defendants argue that "[s]ince the government, for whatever reason, eschewed the process necessary to support a §2232(a) prosecution (i.e., obtaining a writ of seizure), the alleged conduct of the

Russos in transferring and seeking to withdraw funds from the new account was not unlawful." Accordingly, defendants maintain that the first element of the alleged §1512(c)(2) offense -. that the Russos acted corruptly. -- cannot, as a matter of law, be established.  Again the court finds this argument to be without merit at this stage of the litigation. Whether the Russos acted corruptly is a factual determination.

Defendants next argue that since the government did not initiate the process to seize the accounts prior to the transfer the defendants had no reason to believe the intra-bank transfer of an easily traceable account would run afoul of the law.  The defendants cite United States v. Aguilar, 515 U.S. 593, 600 (1995) in support.  In Aguilar, the court held that the alleged obstruction (false statements to an agent) did not have required nexus (i.e. relationship in time, causation, or logic) with the grand jury proceeding because there was not sufficient evidence that the agent was subpoenaed to or would testify before the grand jury.  In other words there was not sufficient evidence that the accused had any intent to impede the administration of justice in an official proceeding.  In the present case the government has properly alleged a violation of §1512 c(2).  It is factual determination whether defendants had the requisite intent.

Defendants also argue that to the extent Count Twenty-Eight can be read to allege that the official proceeding was an action for forfeiture, it cannot be sustained because while the bank account at issue was listed in the forfeiture count contained in Count Thirty Four of the first superseding indictment, the question whether money in the account was subject to forfeiture is conditioned on future events, i.e., a conviction after trial on the substantive criminal charge and a further showing after conviction that the money in the bank account had a sufficient nexus to criminal activity.  The court finds this argument without any support in the law.

The return of an indictment starts an official proceeding. The indictment clearly indicated that the government would seek to forfeit the accounts at issue. There is no requirement that the money actually be forfeited before it is subject to the obstruction of justice prohibition. Counts 28 and 29 sufficiently set forth an alleged violation of the law. The remaining issues are purely factual and are not appropriate for resolution at this stage of the litigation. Accordingly, defendants' motions to dismiss Counts Twenty-Eight and Twenty-Nine are **DENIED.**

*Counts Thirty & Thirty-One -18 U.S.C. §2232(a)* [4]

Counts Thirty and Thirty-One of the Second Superceding Indictment charge defendants Russo, Crystal Russo and Sutley with the removal of property (funds in Visions Bank Accounts) in order to prevent seizure by the government. (Doc. 144 at 27-28) Defendants argue that a condition precedent to the application of this statute is that the person conducting or about to conduct the search and seizure must be authorized to make such search or seizure or the

---

[4] Section 2232, entitled, "Destruction or removal of property to prevent seizure", provides, in pertinent part:

> (a) Destruction or removal of property to prevent seizure.--Whoever, before, during, or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under its lawful custody and control, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 2232(a).

government must otherwise have lawful authority to take custody and control of the property. Defendants argue that it is undisputed that the government did not apply for a writ of seizure or a protective order under 21 U.S.C. § 853(e) *prior* to the conduct of the defendants alleged to be in violation of §2232(a) and therefore no government agent had been authorized to seize the money in the Vision Bank accounts nor did the government have lawful authority to constrain those accounts in any manner. Accordingly, defendants submit that Counts Thirty and Thirty-One of the Second Superceding Indictment must be dismissed as a matter of law.

In response, the government contends that the language of Title 18 U.S.C. §2232(a) [5] is written very broadly and can apply to a number of different situations. Specifically, the government states that the search or seizure of property envisioned by the statute could be, but is not limited to, a traditional 4th Amendment search warrant, a search pursuant to exigent circumstances under the 4th Amendment, a warrantless search pursuant to consent, a seizure warrant under 21 U.S.C. §853(f) [6] or a protective order pursuant to 21 U.S.C. §853(e).

The government argues that the probable cause finding provides a basis for restraining directly forfeitable assets identified in the indictment. Title 21, United States Code, Section

---

[5] The government concedes that the defendants may arguably have a legal challenge to the Title 18 U.S.C. §2232(a)

[6] 21 U.S.C. § 853(f), Warrant of seizure, provides as follows:

The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

853(e)(1)(A) provides for entry of a post indictment restraining order "upon the filing of an indictment or information charging a violation...for which criminal forfeiture may be ordered...and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section."[7] The government further argues that while Title 21 U.S.C. §853 provides that the Court "may" enter a post-indictment restraining order upon the government's application, suggesting a certain amount of discretion, the Supreme Court in United States v. Monsanto, 491 U. S. 600 (1989), made it clear that government applications for post indictment restraining orders should generally be granted, ruling that it was error to import "traditional principles of equity" and equitable balancing tests into the process of issuing and reviewing forfeiture restraining orders. Id. at 612-13. In sum, the government argues that because they would most likely have been given a restraining order if they had applied for one, this court should find that the government had the authority to make the seizure.

The government also argues that the defendant's most restrictive reading of the language of 18 U.S.C. §2232(a), that a search warrant or warrant exception must be in hand, would gut the

---

[7] 21 U.S.C. § 853(e)(1)(A), entitled "Protective Orders" provides:

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section--

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section;

statute of any practical application in the context of a forfeiture and would only hold a defendant criminally liable under 18 U.S.C. §2232(a) for the extremely limited period of time between when the United States obtains the restraining order/seizure warrant from the Court and when the property is restrained/seized.

*Law*

A violation of 18 U.S.C. §2232(a) is established by establishing: (1) That either before, during or after any search or seizure by a person authorized to make such search or seizure, (2) the defendant knowingly destroyed, damaged, wasted, disposed of, transferred property or otherwise took any action(or attempted to do any of the preceding acts) (3) for the purpose of preventing or impairing the Government's lawful authority to the custody or control of the such property.

As previously stated, the defendants basically contend that the government can not establish the first element of the alleged violation of 18 U.S.C. §2232(a) because no order had issued seizing the account, thus there was no person authorized to make such seizure. Defendants cite United States v. Plavcak, 411 F.3d at 658-59 [8] in support of their argument. In Plavcak, defendant filed a motion to dismiss the indictment on the grounds that he did not violate 18 U.S.C. § 2232(a) since no warrant ever authorized seizure of the property he was alleged to have destroyed or removed. Id. at 659. The government argued that a search warrant was not required to authorize seizure of the items because exigent circumstances existed, (i.e., the items

---

[8] In Plavcak, the court noted that the crime established by 18 U.S.C. § 2232(a) requires a showing of the following three elements: "(1) that a person be authorized to search for or seize certain property; (2) that the accused knowingly destroys or removes or attempts to destroy or remove the property subject to the authorized search or seizure; and (3) that the destruction or removal of the property be for the purpose of preventing its seizure." 411 F. 3d at 660.

were in the process of being destroyed when the Government agents arrived on the scene.) Id. The district court disagreed and ordered that the indictment be dismissed. (Id.) On appeal, the Sixth Circuit Court of Appeals held that while the district court correctly interpreted "a person authorized to make searches or seizures" as used in 18 U.S.C. 2232(a) as "a person authorized, pursuant to a warrant or circumstances giving rise to a warrant exception", the court erred in its "determination that exigent circumstances did not exist to justify seizure of the evidence." Id. at 662. See also Thomas v. U.S., 124 F.3d 200, n.1 (6th Cir. 1997) (Table) ("Count 33, based upon 18 U.S.C. § 2232(a), was dismissed because the statute requires proof that the search warrant existed at the time of the alleged document removal or destruction. IRS Special Agent Joseph Ellery made clear in his testimony that such was not the case.")

Rule 12(b) provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." "The proper procedure for raising [a] challenge to the sufficiency of the government's evidence to support a finding [of an element of the offense is] by a motion for judgment of acquittal under Rule 29 and not by a pretrial motion to dismiss." Fed. R. Crim. P. 12 (b); United States v Mann, 517 F. 2d 259, 267 (5th Cir. 1975). [9]

As correctly noted by the government, the defendants' motions go to the sufficiency of the evidence, as would a motion for summary judgment in a civil action. However, there is no recognized summary judgment procedure in criminal cases. Nor do the rules provide for a pre-

---

[9] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent on the Eleventh Circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

trial determination of sufficiency of the evidence. Rather, the sufficiency of a criminal indictment is determined from its face. U.S. v. Salman, 378 F. 3d 1266, 1268 (11th Cir. 2004).

Notwithstanding, in order for the government to avoid a judgment of acquittal the court agrees with the Sixth Circuit that the government must present sufficient evidence, inter alia, that the government had the authority to seize the property when the alleged transfer occurred. U.S. v. Plavcak 411 F.3d at 659; Thomas v. U.S. , 124 F.3d at 200; see also, U.S. v. Gibbons, 331 F.Supp. 970 (D. Del. 1971). The Sixth Circuit's opinion is supported by the plain terms of the statute. 18 U.S.C. §2232(a) does not indicate that it applies if the property is subject to being seized or restrained. If Congress had intended that result they would have plainly stated such, as they did in 18 U.S.C. §2232(b)("Whoever, knowing property is subject to the in rem jurisdiction ...") Instead the statute provides if before the seizure of property by any person authorized to seize, a person knowingly takes any action to prevent the Government from seizing the property then he is guilty of the offense. The statute thus requires that the authority to seize exists at the time the action is taken by the defendant. Accordingly, it would appear from the facts so far argued by the government that there is not a factual basis for Counts Thirty and Thirty-One. However, as discussed herein, this is not the proper stage of the litigation to assert that challenge. Rather, such a challenge would be entertained by the Court at the close of the government's case in chief. Therefore, the Defendants' motion is **DENIED** as to Counts Thirty and Thirty-one.

*Count Twenty-Seven 18 U.S.C. §371* [10]

---

[10] 18 U.S.C. §37, provides, as follows:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of

...

Defendants contend that Count Twenty-Seven of the Second Superceding Indictment is dependent upon the government's ability to proceed with the prosecution of allegations in Counts Twenty-Eight and Thirty (18 U.S.C. 2232(a), and 18 U.S.C. 1512(c)(2)) and since these counts, for the reasons stated in this motion must as a matter of law be dismissed, so too must the count alleging a conspiracy to violate these provisions.

The government objects to the motion on the grounds, in sum, that the conspiracy count and the substantive count(s) stand independent. Conspiracy and the related substantive offense, which is the object of the conspiracy, are separate and distinct crimes. <u>United States v. Romeros</u>, 600 F.2d 1104, 1105 (5th Cir. 1989), citing, <u>Iannelli v. United States</u>, 420 U.S. 770 (1975); <u>United States v. Ragano</u>, 520 F.2d 1191, 1198 (5th Cir. 1975), <u>cert. denied</u>, 427 U.S. 905. Moreover, the government notes that an acquittal on the substantive count does not foreclose prosecution and conviction for a related conspiracy. <u>United States v. Dunbar</u>, 591 F.2d 1190, 1192 (5th Cir. 1979).

***Law***

---

the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

Count Twenty Seven of the Second Superceding Indictment charges, in part, that defendants Russo, Crystal Russo and Sutley "knowingly and willfully did combine, conspire, confederate, and agree with each other...[t]o corruptly obstruct, influence and impede any official proceeding, and attempt to do so; and to before, during, or after a search for or seizure of property by any person authorized to make such search or seizure, knowingly destroy, damage, waste, dispose of, transfer, and otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control...." (Doc. 144 at 22)

It is immaterial whether the charged conspiracy was factually impossible to commit at the inception of the conspiracy.  See United States v. Seelig, 498 F.2d 109, 111 (5th Cir. 1974). In Seelig, agents posed as putative drug purchasers who never intended to carry out acts essential to a true drug conspiracy.  The defendants provided actual cocaine but the agents arrested the defendants once the drug was delivered by the defendants. The Fifth Circuit rejected the defendants' argument that since an "essential act" (the distribution of the cocaine) could never be accomplished as the would be buyers were federal agents, there could be no conspiracy. The Court concluded that "such an approach, we think, is inconsistent with the basic principle that a conspiracy is proved when it is established that two or more persons agreed to commit an offense and one of them engaged in an overt act in furtherance of the agreement." Id.(citations omitted) [11]

The Court can find no distinction between a chargeable conspiracy existing that is made factually impossible by intervening events rather than a conspiracy that is factually impossible from the beginning.  For example, in United States v. Belardo-Quinones, 71 F.3d 941, 943 (1st Cir. 1995) the First Circuit Court of Appeals held that where the agents engaged in a reverse sting but never intended to provide the cocaine to the defendants, the elements of the conspiracy charge were met never-the-less. The Court concluded "[t]here is no basis for making a

---

[11] See also, U.S. v. Montano, 67 Fed.Appx. 589 (11th Cir. 2003)(Table).  In Montano, a case in this district, the government, in its brief on appeal, (2002 WL 32168272)  argued that the defendant's scheme to come to Alabama to find buried drug money still constituted a conspiracy to launder money even though it may have been factually impossible for the defendant to find the money since it may not have existed. The government argued that "whether the object of the conspiracy was highly improbable or outright impossible, it is the agreement to do an unlawful act as implemented by one or more overt acts that constitutes the chargeable conspiracy." Id. The Eleventh Circuit affirmed (without opinion) the defendant's conviction on the conspiracy charge.

distinction between those who start a conspiracy that is impossible from the beginning and one who joins in a conspiracy that has become impossible due to intervening events unknown to the conspirators." Id. (emphasis added); see also, United States v. Jannotti, 673 F.2d 578, 591 (3rd Cir. 1982)(en banc), cert. denied, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed. 2d 1315 (1982)(holding that: "It is...irrelevant that the ends of the conspiracy were from the very inception of the agreement objectively unattainable.")(emphasis added).

In United States v. Recio, 537 U.S. 270, 123 S.Ct. 819, 822 (2003), the Supreme Court opined, in part:

> The Court has repeatedly said that the essence of a conspiracy is 'an agreement to commit an unlawful act.' Iannelli v. United States, 420 U.S. 770, 777 (1975); see United States v. Shabani, 513 U.S. 10, 16 (1994); Braverman v. United States, 317 U.S. 49, 53 (1942). That agreement is 'a distinct evil,' which 'may exist and be punished whether or not the substantive crime ensues.' Salinas v. United States, 522 U.S. 52, 65 (1997). The conspiracy poses a 'threat to the public' over and above the threat of the commission of the relevant substantive crime-both because the '[c]ombination in crime makes more likely the commission of [other] crimes' and because it decreases the probability that the individuals involved will depart from their path of criminality.' Callanan v. United States, 364 U.S. 587, 593-594 (1961); see also United States v. Rabinowich, 238 U.S. 78, 88 (1915) (conspiracy 'sometimes quite outweigh[s], in injury to the public, the mere commission of the contemplated crime')... ('[i]mpossibility' does not terminate conspiracy because 'criminal combinations are dangerous apart from the danger of attaining the particular objective'). So too remains the essence of the conspiracy-the agreement to commit the crime....

Id.

Thus, regardless of whether the object of the conspiracy was impossible, it is the *agreement* to do an unlawful act as implemented by one or more overt acts that constitutes a chargeable conspiracy.   Accordingly, defendants' motion to dismiss Count Twenty-Seven is **DENIED**.

**DONE** this the 16th day of August, 2006.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**