IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 05-00345-KD-C |
| | ) | |
| LAWRENCE PETER SUTLEY | ) | |
| | ) | |
| | ) | |

**REVISED MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for judgment of acquittal made by

Defendant Lawrence Peter Sutley ("Sutley") pursuant to Federal Rules of Criminal Procedure

14, 29, and 33, filed December 6, 2006 (Doc. 326) [1] and the government's response in

opposition thereto, filed January 22, 2007 (Doc. 360).  The Court has carefully considered the

arguments in support of and in opposition to the defendant's motion.  For the reasons stated

herein, defendant's motion for judgment of acquittal is **DENIED**.  Also, defendant's motion for

new trial is **DENIED.**

I.      **BACKGROUND**

On March 31, 2006, the government filed a Superceding Indictment [2] against Steve

---

[1]  Prior to the submission of the case to the jury defendant Sutley made an oral motion for
judgment of acquittal as to Counts 1, 3-10, 27, 29, 31 of the Second Superceding Indictment.
The Court denied Sutley's motion as to Counts 1, 3-10, 27, 29 and GRANTED the motion as to
Count 31.

[2]  On December 28, 2005 the initial indictment in this action was handed down against defendant
Steve Russo only.  (Doc. 1)

Russo, Laurence Sutley, James Brown [3], and Kenneth Wall.  (Doc. 33)  On June 13, 2006, the

government filed a Second Superceding Indictment against defendants Steve Eugene Russo,

Laurence Peter Sutley, Kenneth David Wall and Crystal McDonald Russo.[4]  (Doc. 144) Count

One of the thirty- two count Second Superceding Indictment charged that defendant Lawrence

Sutley along with James Brown and co-defendants Kenneth Wall, and Steve Russo conspired to

defraud (through the use of mail and wire transactions) the citizens of Orange Beach, Alabama

of their right to Steve Russo's honest services as Mayor of the City of Orange Beach, Alabama.

(Doc. 144 at 3)  The conspiracy set forth multifaceted schemes in which Russo was the common

beneficiary.  (Id. at 3-5)  An object of the alleged conspiracy was to enrich Russo in order to gain

the then Mayor's support for various projects that Brown and Wall had pending in Orange

Beach.  (Id. at 5-9) The indictment also charged defendant Sutley with substantive violations of

mail fraud, wire fraud, obstruction of justice and conspiracy to obstruct justice.

On September 1, 2006, the jury convicted Sutley of eight counts in the Second

Superseding Indictment – Counts 1, 3, 4, 5, 6, 8, 9, and 27, which include two conspiracy counts

(Counts 1, 27)  and six substantive counts (Counts 3, 4, 5, 6, 8 and 9).

## II.    DISCUSSION

Defendant Sutley moves the Court to enter a judgment of acquittal as to all counts on

which the jury returned a guilty verdict against him on the grounds, in sum,  that the government

evidence fails to  support the guilty verdicts.  (Doc. 326).  Specifically, Sutley argues that he had

---

[3]  James Madison Brown was a named defendant in the First Superceding Indictment, filed
March 31, 2006.  (Doc. 33) Brown entered a plea of guilty to Count 1 of the indictment on June
1, 2006  (Doc. 135) and is awaiting sentencing.

[4]  Crystal Russo entered a plea of guilty to Count 28 of the Second Superceding Indictment on
September 29, 2006 (Doc. 297) and was sentenced on January 16, 2007.  (Doc. 354)

no knowledge of the land flip deal, that he had no knowledge of any free construction work Brown performed for Russo, and that he believed the American Hot L.L.C., real estate venture was a "a normal real estate investment, with risks and rewards shared equally among its three members."  (Id. at 11)

Fed. R. Crim. P. 29

In analyzing defendant's post-verdict Rule 29 motion the Court must "review the sufficiency of the evidence . . . in the light most favorable to the government" and draw "all reasonable inferences in favor of the jury's verdict.  United States v. Gatlin, 2006 WL 2567587, *2 (11th Cir., September 7, 2006) (unreported opinion) citing United States v. Castro, 89 F.3d 1443, 1450 (11th Cir.1996).  "A jury's verdict must be sustained against such a challenge if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Alaboud, 347 F.3d 1293, 1296 (11th Cir. 2003) (internal quotations and citation omitted).  "The evidence may be sufficient even when it does not 'exclude every reasonable hypothesis of innocence or [is not] wholly inconsistent with every conclusion except that of guilt,' because a 'jury is free to choose among reasonable constructions of the evidence.'" United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005) (citations omitted).  Moreover, the court "accept[s] all reasonable inferences that tend to support the government's case".  United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999).   However, the primary rule is that "the Constitution requires substantial evidence to support any criminal conviction".  U.S. v. Adkinson, 158 F.3d 1147, 1152, n.10 (11th Cir. 1998), citing United States v. Malatesta, 590 F. 2d 1379, 1382 (1979) (en banc).

As a threshold matter, the court addresses Sutley's argument that he was not a public employee.  Specifically, Sutley argues that at the time period relevant to this case, he was the

City Attorney for Orange Beach Alabama and worked on a contract basis only and, thus, was not a public official or public employee.  (Doc. 326 at 4-5)  In response the government notes that the honest services statute applies to both public and private conduct and, as the appointed and retained City Attorney in Orange Beach, Alabama, Sutley's salary was paid by the taxpayers to render counsel to the City and its officials in the best interests of the City and its citizens, rather than in his own private interests or in the private interests of the defendant and former Mayor Steve Russo. (Doc. 360 at 4) The government contends that the issues and matters on which Sutley was paid to opine included issues and matters related to the approval or rejection of real estate development proposals, as well as ethical issues. (Id.)

The issue of whether Sutley is a public official is of no consequence to the discussion of whether there is sufficient evidence to sustain his convictions.  Sutley was convicted of knowingly participating in a scheme to defraud the citizens of Orange Beach of the honest services of their Mayor.   The indictment did not charge that the citizens of Orange Beach were deprived of Sutley's honest services as a contract city attorney.


A.   Conspiracy

Count One of the Second Superceding Indictment alleges that defendant Sutley, along with Brown and co-defendants Russo and Wall, conspired with one another to commit honest services mail and wire fraud.  (Doc. 144 at 3-9)  The Eleventh Circuit Court of Appeals recently reiterated the proof the government must come forward with to obtain a conspiracy conviction. See United States v. Ndiaye, 434 F.3d 1270 (11th Cir. 2006).   In Ndiaye, the Court opined, in pertinent part:

In order to obtain a conviction for conspiracy under 18 U.S.C. § 371, the

4

> Government must prove (1) that an agreement existed between two or more
> persons to commit a crime; (2) that the defendant knowingly and voluntarily
> joined or participated in the conspiracy; and (3) a conspirator performed an overt
> act in furtherance of the agreement. See United States v. Ellington, 348 F.3d 984,
> 989 (11th Cir.2003). The knowledge requirement is satisfied when the
> Government shows a defendant's awareness of the essential nature of the
> conspiracy. See United States v. Lluesma, 45 F.3d 408, 410 (11th Cir.1995). A
> conviction for conspiracy may be obtained via circumstantial evidence.

434 F.3d at 1294.

As stated in previous orders, the government's evidence established beyond a reasonable doubt that an implicit agreement existed between Jim Brown and Mayor Russo that Brown would provided financial favors to Russo and, in return, Russo would use his influence to support Brown's business endeavors in Orange Beach.  Specifically, the government's evidence showed the following: 1) Brown gratuitously provided remodeling work and materials for Russo's residence totaling thousands of dollars; 2) Brown gratuitously shared his investment in the American Hot venture with Russo; 3) Brown gave Russo part of his profits from his contract with Orange Beach for debris removal; 4) Brown agreed to give Russo part of Brown's profits from the sale of the Romar Vista property in return for Russo's help in getting the property sold; 5) Brown agreed to build a new house for Russo at cost; 6) Brown provided $10,000 to Russo to purchase a car and, 7) Brown agreed to help Russo buy the "land-flip" Bankester property. Brown testified that he provided this assistance to Russo "to protect [Brown's] livelihood in Orange Beach" and "without the Mayor's support I wouldn't have any projects".  Thus the first element, that two or more persons agreed to commit an illegal act, was established.

Next, the government was required to prove that defendant Sutley knowingly and voluntarily participated in the conspiracy between Russo and Brown.  There was no direct evidence that Sutley was aware of the previous corrupt relationship between Russo and Brown

nor was there direct evidence that Sutley was aware of Brown's intent to use the American Hot deal as further gratuity for Russo.  While the government was entitled to rely on circumstantial evidence, they were required to establish beyond a reasonable doubt that Sutley was "aware[ ] of the essential nature of the [Russo/Brown] conspiracy. " United States v. Lluesma, 45 F.3d 408, 410 (11th Cir. 1995).

In order to show that Sutley had knowledge of the conspiratorial agreement between Brown and Russo, the government relies partially on Russo and Sutley's personal and professional relationship. Specifically, the government notes that Russo and Sutley along with their spouses, traveled to New York together.  Further the government presented evidence that Sutley and Russo were partners in a limited liability company, Bayside, L.L.C..  The government also points to the fact that Sutley was dependent on Russo to continue to be the City Attorney. However, the law is clear that "mere association with persons engaged in a conspiracy does not qualify someone as a member of the conspiracy". U.S. v. Arbane, 446 F.3d 1223, 1233 (11th Cir. 2006).

The government further cites the following evidence as additional support to show Sutley's awareness of the essential nature of the Brown/Russo conspiracy: 1) Sutley's use of the American Hot LLC as the vehicle for the investment in the West Beach property; 2) Sutley's failure to file amendment papers showing the true members of the American Hot LLC; 3) Sutley's  failure to follow through on a statement to Brown that he would contact the Alabama Ethics Commission to get an opinion regarding the ethics of the business association of Brown, Russo and Sutley; 4) Sutley's failure to disclose American Hot as a client in his retention contract with the city; 5) Sutley's failure to bring to the public's attention Russo's conflict of interest when he voted on Brown-related projects; 6) Brown's lack of need for a partner in the

6

West Beach project; 7) Sutley's access to bank records which reflected that Russo did not pay his portion of the insurance and interest payments; 8) Sutley's failure to assist in the "planning and construction of the house"; 9) Sutley's pressure on Brown to expedite the construction of the house; 10) Sutley's directive to Brown to divide the insurance proceeds; and 11) Sutley's act of giving Brown the deadline for qualifying for the Mayoral election which Brown used in a real estate transaction to assure that an alleged anti-development person would move outside Orange Beach and thus not qualify for Mayor.

Many of the acts (6-10) of Sutley alleged by the government to show his knowledge of the corrupt scheme, do not support the premise.  Each such act will be discussed.  First, Brown's alleged lack of need for a partner may be true, but that assumes Brown wanted to take all the risk and, more importantly, that Sutley knew that Brown did not need partners.  The court notes that while the government maintained that Brown did not need a partner in the West Beach project, Brown had a partner in the West Beach project prior to selling his purchase contract to American Hot LLC.  Moreover, the government failed to put forth any evidence that Sutley had knowledge of Brown's lack of need or desire for a partner.   Thus, Brown's lack of need of a partner is not evidence of Sutley's knowledge.

Next the government argues that Sutley had access to the bank records which indicate that Russo did not pay his portion of the insurance or interest payments.  However, the fallacy in this argument is that there was no evidence that Sutley was actually aware that Russo did not pay his portion of the interest payments and insurance.  The Vision Bank records, which show deposits and withdrawals of American Hot LLC, were maintained by and mailed to Brown. There was no evidence that Sutley ever reviewed the records or had knowledge of the records

concerning the deposits and withdrawals.[5]  Moreover, there was no testimony from Brown that he ever alerted Sutley to the fact that Russo was "getting a free ride", i.e. not paying his share of the insurance and interest payments.

The government also points to Sutley's acts regarding the business of American Hot LLC.  In this vein, the government begins with the premise that Sutley had knowledge of Brown/ Russo's corrupt intent as it related to West Beach, and then attempts to show how normal business decisions support the premise.  First they find fault in Sutley's failure to assist in the "planning and construction" of the house on West Beach.  This is a perplexing argument since Brown was paid for his overhead expenses in constructing the house and was paid to construct the house.  Next the government finds it a sinister act that Sutley pressured Brown to get the house built so they could sell it and make a profit.  However, as shown by the government's evidence, Sutley was a co-signer of a $1.6 million dollar loan and was paying his share of the quarterly interest payments.  It would only be reasonable that Sutley would want the house to be built and sold expeditiously.  The government also points to the fact that Sutley directed that the insurance proceeds be divided.  The government's evidence indicated that Sutley had paid his portion of the insurance and thus he was legitimately entitled to take his share of the proceeds. The only way these acts are in furtherance of the conspiracy is if Sutley had knowledge that Russo was "getting a free ride" and thus the proceeds were simply gratuitous to Russo.  It is a circular argument to say these acts by Sutley prove his knowledge of the corrupt relationship between Brown and Russo.

The remaining evidence relied upon by the government to support Sutley's knowledge of the scheme to defraud the citizens of Orange Beach of the honest services of Mayor Russo,

_____

[5] The only evidence of money of American Hot LLC maintained in Sutley's trust account was the earnest money from an offer to buy the property that did not materialize.

relates to the alleged effort by Sutley to hide the business relationship of Brown and Russo.  To reiterate, the government relies on Sutley's use of the already established American Hot LLC and his failure to file amendments to show the true members;[6] Sutley's failure to get an ethics opinion on the business arrangement; Sutley's failure to disclose his interest in American Hot LLC in his retention contract with the city; and Sutley's silence in the face of Russo's votes on projects of concern to Brown.   A reasonable inference from this evidence along with evidence of Sutley's close relationship with Russo was that Sutley knew of the corrupt relationship and took steps to conceal the relationship.  This inference was bolstered by Sutley's participation in the scheme to make sure Russo's potential opponent in the Mayoral race moved out of town.  Admittedly, this evidence can be reasonably explained whereas not to be detrimental to Sutley. However, the jury is free to choose which construction of the evidence they believe.  Thus, the evidence of Sutley's concealment of the business relationship between Russo and Brown provides sufficient evidence for a reasonable jury to find that Sutley was aware of the Brown/Russo corrupt scheme and intentionally advanced their cause.   Accordingly, the motion for judgment of acquittal is **DENIED.**

      B.    <u>Mail and Wire Fraud</u>

      Sutley was convicted of counts 3, 4, 5 and 6, which charged mail fraud, in violation of 18 U.S.C. §1341 and §2 and counts 8 and 9 which charged wire fraud, in violation of 18 U.S.C. §1343 and § 2.  To prove that Sutley committed the alleged fraud, the Government had to prove that he (1) intentionally participated in a scheme to defraud; and (2) used or caused to be used wire communications (counts 8 and 9) or mail service (counts 3, 4, 5 and 6 ) to further that scheme.  <u>United States v. Brown</u>, 40 F.3d 1218, 1221 (11th Cir.1994).  The Supreme Court has

---

[6] The parties stipulated prior to trial that the recording of assignments was not required under the law.

held that in addition, "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." Neder v. United States, 527 U.S. 1, 25, 119 S.Ct. 1827, 1841, 144 L.Ed.2d 35 (1999).  The Government must also "identify of what the victim has been defrauded-for example, money, property, or the §1346 intangible right of honest services." U.S. v. deVegter,198 F.3d 1324, 1328 fn. 4 (11th Cir. 1999). The right to honest services has been fully explained by the Eleventh Circuit.

> Public officials inherently owe a fiduciary duty to the public to make governmental decisions in the public's best interest. 'If the official instead secretly makes his decision based on his own personal interests-as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest-the official has defrauded the public of his honest services.' When the prosecution can prove the other elements of the wire fraud offense, taking kickbacks or benefiting from an undisclosed conflict of interest will support the conviction of a public official for depriving his or her constituents of the official's honest services because '[i]n a democracy, citizens elect public officials to act for the common good. When official action is corrupted by secret bribes or kickbacks, the essence of the political contract is violated.' Illicit personal gain by a government official deprives the public of its intangible right to the honest services of the official.

198 F. 3d  at 1328 (citations omitted).   Moreover, that the result of the public official's action or vote would actually benefit the citizens does not change the fraudulent nature of the conduct. U.S. v. Lopez-Lukis, 102 F.3d 1164, 1168 fn. 13 (11th Cir. 1997)  Honest services fraud does not address the wisdom or results of an official decision, rather, it concerns the manner in which officials make their decision. Id.

The government argued that the West Beach project, which was owned by American Hot LLC, was set up to benefit Russo.  Brown's testimony supports this theory as it relates to Brown's ongoing efforts to keep Russo satisfied.  As discussed previously, there is sufficient circumstantial evidence to support Sutley's knowledge of the scheme.  Accordingly, the government's evidence was sufficient to prove that Sutley  intentionally participated in a scheme

to defraud the citizens of Orange Beach of the honest services of Mayor Russo.

The government's evidence also established that the mails and wire communication facilities were used to further the scheme.  "In order to be convicted of mail fraud, a defendant …must have known that use of the mail would follow in the ordinary course of business, or that he should have foreseen such use even though it was unintended."  United States v. Rhodes, 177 F.3d 963, 966 (11th Cir. 1999).  "The mailing may be perfectly innocent as long as it is incidental to an essential part of the scheme to defraud or a 'step in the plot.'"  United States v. Mills, 138 F.3d 928, 941 (11th Cir. 1998) (citation omitted).  The mailings at issue each materially pertained to the scheme involving the West Beach property. The same analysis applies to the wire fraud counts.  Thus, the government's evidence was sufficient to support Sutley's convictions on the substantive mail and wire fraud counts.  Accordingly, the defendant's motion for judgment of acquittal on these counts is **DENIED.**

C.    Conspiracy to Transfer Funds/Obstruction of Justice

Count 27 of the Indictment charges that Sutley , Brown and Russo conspired to transfer funds out of American Hot L.L.C.'s bank account immediately after they learned that those accounts had been listed in the superceding indictment's forfeiture count.  The indictment alleged that the conspiracy was an agreement to obstruct justice in violation of 18 U.S.C. §1512(c)(2) [7] and to transfer funds in violation of 18 U.S.C. §2232(a) [8].  The government's case

---

[7]  Section 1512, entitled "Tampering with a witness, victim, or informant", provides in relevant part:

(c) Whoever corruptly--

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

on this count rested, in large part, on the testimony of Brown who recounted that the day the superceding indictment was returned, he and Sutley had several telephone conversations including one in which Sutley excitedly told Brown that "the feds are trying to get the house [American Hot house] our bank account [American Hot bank account] and to get the money out of the bank account." Brown testified that in a later conversation that same day Sutley told Brown to "move the money." After being instructed that they "must unanimously agree upon which of the two offenses the Defendant conspired to commit", the jury returned a guilty verdict as to Sutley.

Sutley argues that he should be acquitted or granted a new trial on Count Twenty-seven for three reasons. First, he argues that the act of transferring the funds from the account did not obstruct justice as that term is defined in the statute, the legislative history and case law. The court finds this argument to be without merit. There is no question that an official proceeding regarding the forfeiture of the funds was underway once the indictment was returned. The evidence was sufficient for a reasonable jury to find that Sutley attempted to conceal these funds

---

18 U.S.C. § 1512(c)(2).

[8] Section 2232, entitled, "Destruction or removal of property to prevent seizure", provides, in pertinent part:

> (a) Destruction or removal of property to prevent seizure.--Whoever, before, during, or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under its lawful custody and control, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 2232(a).

from forfeiture, thus impeding the official proceeding.

Next, Sutley argues that the transfer of money did not violate section 2232(a) because, as this court has previously determined, there must be evidence that a person is authorized to make the search or seizure at the time the property is transferred, and no such evidence was presented. Sutley then argues that because the transfer of the funds did not violate section 2232(a), the agreement to transfer the money cannot be the basis for a conspiracy to violate section 2232(a). This argument has previously been rejected by this court. As explained in more detail in the court's order of August 16, 2006 (Doc. 248, pp. 11-13), the law is clear that it is immaterial whether the charged conspiracy was factually impossible to commit at the inception of the conspiracy. Rather, the essence of the conspiracy is the agreement to commit the unlawful act. The court finds that the evidence was sufficient for a reasonable jury to find the essential elements of a conspiracy to transfer funds in violation of section 2232(a).

Sutley's third argument can be summarized as a failure by the court to instruct the jury as to all the essential elements of the offense of conspiracy to violate section 2232(a). Specifically, Sutley argues that the court failed to instruct the jury that an element of the Count Twenty-seven conspiracy offense was "that Sutley intended that the funds be transferred at a time that the government would have the existing authority to seize the funds...." Sutley correctly notes that there was no defense objection to the phrasing of the Count Twenty-seven conspiracy charge. However, defendant posits that the error was plain, therefore excusing the failure to object.

As defendant points out, "[f]ailure to instruct the jury regarding an element of the offense is plain error where ... the government introduces no evidence regarding the element in question." U.S. v. McArthur, 108 F.3d 1350, 1353 (11th Cir. 1997). In this case the government produced significant evidence of Sutley's intent that money be transferred before the

13

government could seize the funds.  A reasonable inference from Sutley's panicked reaction to the indictment, was that he thought the seizure of the money was imminent.  Thus, since the government introduced significant evidence regarding Sutley's intent, any error would not form the basis for acquittal or a new trial.

Accordingly, defendant's motion for judgment of acquittal as to Count Twenty-seven (conspiracy to obstruct) is **DENIED.**

## III.    MOTION FOR NEW TRIAL [9]

In the alternative, defendant Sutley moves for a new trial on all counts of conviction "on the grounds of prejudicial joinder pursuant to Fed. R.Crim. P. 8 and 14 and on multiple conspiracies".

Federal Rule of Criminal Procedure 33 provides that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." In determining whether to grant the motion, the Court must carefully weigh the evidence and may assess the credibility of the witnesses.  See  U.S. v. Tarango, 396 F.3d 666, 672 (5th  Cir.2005) (citations omitted); U.S. v. Martinez, 763 F.2d 1297, 1312 (11th  Cir.1985) (citations omitted).  If, after weighing the evidence and assessing the credibility of witnesses, the Court concludes that, " 'despite the

---

[9]  Sutley also renews his earlier motion for severance on the grounds that "[i]t is substantially likely that the reason the jury saw this case differently was that Sutley was severely prejudiced by the evidentiary spill-over effect of being forced to defend himself at a trial involving evidence of land flips and bribery schemes not involving him at all."  (Doc. 326 at 24) In response the government argues that the evidence against Sutley concerned part of the same transactions or series of transactions that related to the charged conduct of his co-defendants Russo and Brown – the American Hot transaction, conspiracy to obstruct justice and obstruction of justice, and therefore severance was not warranted.  (Doc. 360)  By order dated August 3, 2006, the undersigned denied Sutley's motion to sever as to Counts Three through Eleven and Twenty-Six. The Court made no ruling on whether Counts Twenty-Seven, Twenty-Nine and Thirty-One were properly joined as neither the defendant or the government adequately addressed the appropriateness of the joinder of these counts.  (Doc. 216)  The Court directed that any party requesting severance of Counts Twenty-Seven through Thirty-One file an appropriate motion on or before August 9, 2006. (Id.) No motion was filed.

abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently

heavily against the verdict that a serious miscarriage of justice may have occurred,' "the Court

may set aside the verdict and grant a new trial. <u>Martinez</u>, 763 F.2d at 1312 (quoting <u>U.S. v.

Lincoln,</u> 630 F.2d 1313, 1319 (8th Cir.1980)).

       "[T]here are two grounds upon which a court may grant a motion for new trial: one based

on newly discovered evidence, which must be filed within three years of the verdict pursuant to

Rule 33(b)(1); and the other based on any other reason, typically the interest of justice, which

must be filed within seven days of the verdict, pursuant to Rule 33(b)(2)." <u>United States v.

Campa,</u> 459 F.3d 1121, 1151 (11th Cir. 2006).  The Court finds that the defendant's arguments in

support of a new trial, including Sutley's argument that the trial should have been severed,

provide no meritorious bases for the Court to grant a new trial.  Accordingly, the motion for new

trial is **DENIED**.


**IV.**    <u>**CONCLUSION**</u>

       Accordingly, for reasons stated above, defendant, Lawrence Peter Sutley's motion for

judgment of acquittal is **DENIED**.  Sutley's motion for new trial is also **DENIED**.

       **DONE** and **ORDERED** this <u>2nd</u> day of February 2007**.**


              s/ Kristi K. DuBose         
             **KRISTI K. DuBOSE**
             **UNITED STATES DISTRICT JUDGE**