**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **CRIMINAL ACTION 05-00345-KD-C** |
| | ) | |
| **STEVE EUGENE RUSSO,** | ) | |
| **LAURENCE PETER SUTLEY** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PRELIMINARY ORDER OF FORFEITURE**

A hearing was held on February 7, 2007 before the undersigned District Judge on the
following:  the government's motion for preliminary order of forfeiture (Doc. 281); defendant
Steve Russo's response in opposition (Doc. 323) [1]; defendant Laurence Sutley's response in
opposition to motion for forfeiture (Doc. 324); the government's reply to Russo's response in
objection.  (Doc. 359) and the government's reply to Sutley's response in opposition to the
motion for forfeiture (Doc. 360).  Present at the hearing were Assistant United States Attorneys
Steven Butler, George May and Sean Costello for the government, Neil Hanley, Esq., Donald
Brutkiewicz, Jr., Esq.,  and John Nields, Esq., for the defendant Laurence Sutley and Richard
Horne, Esq., for defendant Steve Russo.  For the reasons set out herein, the government's motion
for order of preliminary forfeiture is **GRANTED, in part and DENIED, in part**.

I.      Procedural Background

---

[1]  Russo submitted a combined response to the motion for preliminary forfeiture with the
motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29.  (Doc. 323)

1

On June 13, 2006, a federal Grand Jury sitting in the Southern District of Alabama,

returned a thirty-two Count Second Superseding Indictment naming, inter alia, the defendants,

Stephen Eugene Russo and Laurence Peter Sutley in various counts of the Second Superseding

Indictment.  (Doc. 144) The indictment contains a forfeiture count (Count 32).   Count 32 of the

Second Superseding Indictment identifies the following property/assets as being subject to

forfeiture as property "constituting, or derived from, proceeds the defendants obtained directly or

indirectly as result of the offenses":

REAL PROPERTIES

A. All that lot or parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at 2641 West Beach
Boulevard, Gulf Shores, Alabama, which is owned by American Hot, LLC in
which Russo, Brown, and Sutley each hold a one-third interest, and is more
particularly described as: Lot 6, Block D, Baldwin Beach Properties, as recorded
in Map Book 4, page 230 Office of the Judge of Probate of Baldwin County,
Alabama.

B. All that lot or parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at Burkart Estates in
Orange Beach, Alabama, which is two lots owned by Russo and purchased with
the proceeds of the land flip transaction, and is more particularly described as:
Lots Fifty-seven (57) and Fifty-eight (58), Unit Two, Burkart Estates, according
to the official map or plat of said subdivision, which is recorded in Map Book 6,
Page 181, Office of the Judge of Probate of Baldwin County, Alabama.

AUTOMOBILES
A 2004 BMW, Model 530i, VIN#: WBANA73584B810793, which was
purchased by Russo using a $10,000.00 check solicited from Brown.

BUSINESSES

The business, and all its assets, known as American Hot, LLC, established on
March 31, 2004. This includes but is not necessarily limited to all real properties,
lots or parcels of land, together with their buildings, appurtenances,
improvements, fixtures, facilities, and attachments; all vehicles and conveyances;
all furnishings, furniture, supplies, electronics, bank accounts and/or credit
accounts, purchased by, purchased for, or used in or for the business known as

2

American Hot, LLC.

BANK ACCOUNTS

Vision Bank, Account Number 20007418, held in the name of Steve Russo.

Vision Bank, Account Number 10015728, held in the name of American Hot, LLC.

MONEY JUDGMENT

A sum of money equal to $207,000.00 in United States currency, representing proceeds obtained, directly or indirectly, as a result of the said offenses, for which the defendants are jointly and severally liable. This amount comprises the following monetary transactions:

A. Check number 634 in the amount of $10,000.00 dated December 7,2004, written by Brown from his personal bank account at Vision Bank, made payable to Crystal McDonald. Russo did then use the $10,000.00 check to purchase a 2004 BMW automobile from a BMW
dealership on or about the same date, December 7, 2004.

B. Check number 115 in the amount of $60,000.00 dated January 31,2005, written at the direction of Brown from Vision Bank account number 10015728, held in the name of American Hot, LLC, and made payable to Russo. Russo did then deposit the $60,000.00 check into his own personal bank account at Vision Bank, account number 20007418, on or about February 2, 2005.

C. Check number 119 in the amount of $33,000.00 dated April 4, 2005, written at the direction of Brown from Vision Bank Account number 10015728, held in the name of American Hot, LLC, and made payable to Russo. Russo did then deposit the $33,000.00 check into is own personal bank account at Vision Bank, account number 20007418, on or about April 7, 2005.

D. Check number 114 in the amount of $60,000.00 dated January 31, 2005, written at the direction of Brown from Vision Bank account number 10015728, held in the name of American Hot, LLC, and made payable to Sutley.

E. Check number 118 in the amount of $33,000.00 dated April 4, 2005, written at the direction of Brown from Vision Bank Account number 10015728, held in the name of American Hot, LLC, and made payable to Sutley.

F. Approximately $11,000.00, representing campaign contributions diverted by Russo from his campaign account number 20035985 at Vision Bank to pay personal expenses billed to Russo's personal American Express account.

(Doc. 144)

On September 1, 2006, the defendants Russo and Sutley were convicted of most of the counts in which they were charged in the Second Superseding Indictment. [2] On September 18, 2006, the government filed the instant motion for preliminary order of forfeiture wherein they seek forfeiture of "any and all property which was property 'constituting, or derived from, proceeds the defendants obtained directly or indirectly as result of the offenses' charged in the Second Superseding Indictment" under 18 USC §981(a)(1)(C) (Doc. 281) Defendants Sutley and Russo submitted responses in opposition to the motion and the matter is now ripe for the court's consideration.

## II.    DISCUSSION

A.    Law on Forfeiture

The government seeks, pursuant to Federal Rule of Criminal Procedure 32.2(b)(2), the entry of a preliminary order of forfeiture against defendants Steve Russo and Laurence Sutley as a result of the defendants' convictions of mail fraud and wire fraud.  (Doc. 281)

Defendants first argue that the Court is without any jurisdictional basis to consider the forfeiture claims of the government.  Defendants note that both the Superseding Indictment

---

[2]  Russo was acquitted on Counts 7, 10 and 17 and convicted of the 22 remaining counts in which he was charged. Sutley was acquitted on Counts 7 and 10 and convicted of the 7 remaining counts in which he was charged. After the jury returned verdicts of guilty against Sutley and Russo, the defendants waived their right to have the forfeiture issue determined by a jury

4

(Doc. 33) and the Second Superseding Indictment (Doc. 144) reference 18 U.S.C § 982 [3], the criminal forfeiture statute, which  includes wire and mail fraud "affecting a financial institution" although there has been no suggestion or evidence that any bank or financial institution suffered any loss in this action.  (Docs. 323, 326)  Defendants further point to the fact that both indictments contain claims for substitute assets, a provision available under § 982, but not available under §981, the civil forfeiture statute.  (Id.) [4]

In response the government first argues that the reference to  § 982 instead of § 981 was merely a scrivener's error.  Alternatively, the government argues that the Civil Asset Forfeiture Reform Act, 28 U.S.C. § 2461 authorizes criminal forfeiture for any criminal offense for which civil forfeiture is authorized.  As the government correctly notes, prior to trial, the Court conducted a full hearing on this jurisdictional issue and concluded that, despite the "scrivener's error",  the indictment was sufficient in that it "contain[ed] notice to the defendant[s] that the government will seek the forfeiture of property as part of any sentence in accordance with the

---

[3] Under 18 U.S.C. § 982, "any property, real or personal, involved in such offense, or any property traceable to such property" is subject to criminal forfeiture. The term "involved in" has consistently been interpreted broadly by courts to include any property involved in, used to commit, or used to facilitate the money laundering offense. See  United States v. Puche, 350 F.3d 1137 (11th  Cir.2003).  As correctly noted by both Russo and Sutley in their briefs, criminal forfeiture is typically authorized for the offenses of mail and wire fraud only when "special circumstances" are present, such as where the fraud affected a financial institution. 18 U.S.C. § 982(a).

[4] Defendants further argue that the court's interpretation constitutes an impermissible constructive amendment to the indictment.  The Court finds this argument without merit. Regardless of whether incorrect the citation to the statute in the indictment was the result of a typographical error or a mistake, the language in the indictment tracks the language in Section 981.  Accordingly, there is no constructive amendment and the defendants were provided adequate notice under the statute.

applicable statute."  Fed. R. Crim. P. 32.2(a).

As discussed in detail by the Second Circuit Court of Appeals in United States v.

Schlesinger, 396 F.Supp.2d 267 (E.D.N.Y.2005),  28 U.S.C. § 2461(c) [5] authorizes criminal

forfeiture where "a forfeiture is authorized in connection with a violation of an Act of Congress,"

which, in this case, is the civil forfeiture statute, 18 U.S.C. § 981.  Section 981 permits forfeiture

of proceeds from the crimes identified in 18 U.S.C. § 1956(c)(7), and Section 1956(c)(7), in turn,

includes the list of crimes set forth in 18 U.S.C. § 1961(1), including "mail fraud," not only mail

fraud "affecting a financial institution."   Id. at 275.  ("[U]nder the plain terms of [28 U.S.C. §

2461(c) ], criminal forfeiture for mail and wire fraud is permitted.");  see  United States v.

Vampire Nation, 451 F. 3d 189 (3rd Cir. 2006) (holding that § 2461(c) permits criminal forfeiture

for general mail fraud because (1) 18 U.S.C. § 981(a)(1)(C) authorizes civil forfeiture for general

mail fraud; and (2) no statutory provision specifically authorizes criminal forfeiture for general

mail fraud.)

In Schlesinger, the court opined, in pertinent part, as follows:

> In this case, under the plain terms of § 2461(c), criminal forfeiture for mail and
> wire fraud is permitted. There is no specific criminal provision for mail and wire

---

[5]  28 U.S.C. § 2461(c) provides as follows:

If a forfeiture of property is authorized in connection with a violation of an Act of
Congress, and any person is charged in an indictment or information with such
violation but no specific statutory provision is made for criminal forfeiture upon
conviction, the Government may include the forfeiture in the indictment or
information in accordance with the Federal Rules of Criminal Procedure, and
upon conviction, the court shall order the forfeiture of the property in accordance
with the procedures set forth in section 413 of the Controlled Substances Act [21
U.S.C. § 853], other than subsection (d) of that section.

fraud, only a criminal provision for mail and wire fraud where "special circumstances" are present. However, § 981 authorizes civil forfeiture for mail and wire fraud without the special circumstances that need to be present under § 982. Therefore, the Court finds that § 2461(c) permits the government to include the civil provision (§ 981) in the indictment, and for the court to enter a preliminary order of criminal forfeiture upon conviction in accordance with the Federal Rules of Criminal Procedure.

...

Here, the legislative history makes it clear that Congress intended § 2461(c) to authorize criminal forfeiture for offenses such as mail and wire fraud, as long as there is a corresponding civil forfeiture provision. Section 2461(c) was enacted in the year 2000 as part of the Civil Asset Forfeiture Reform Act ("CAFRA"). The CAFRA was an extensive reform of the federal forfeiture system. The Act primarily addressed areas of civil forfeiture such as (1) the burden of proof, (2) the right to appointed counsel, (3) the innocent owner defense, (4) the return of property and compensation for damage to property, (5) the elimination of a cost bond, and (6) the time to contest forfeiture. These reforms brought the due process protection afforded to civil defendants in line with criminal forfeiture proceedings. Pub.L. No. 106-185, 114 Stat. 202 (2000).

...

No other result seems reasonable. Section 2461(c) saves the parties the time and expense of litigating both a criminal and civil action, or re-litigating the same issues under the same standards. It also furthers the intent of Congress, that is, to allow for criminal forfeiture whenever civil forfeiture is available. Assuming § 2461(c) did not authorize criminal forfeiture for mail and wire fraud, the government would be required to commence a separate civil action for forfeiture under § 981-which authorizes civil forfeiture for mail and wire fraud-and re-litigate the same facts and issues under the same standards as it would have if § 2461(c) authorized criminal forfeiture. This procedure makes no sense and frustrates the manifest intent of the statute.

Id. at 275-277.  The undersigned concurs with the analysis set forth by the Second Circuit Court of Appeals in United States v. Schesslinger, and adopts the same reasoning in support of  its determination that  § 2461(c) authorizes criminal forfeiture under § 981 for mail and wire fraud

without having to prove the "special circumstances" listed in § 982(a). [6]

The Court now turns to what items are subject to forfeiture under §981.  Under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property "which constitutes or is derived from proceeds traceable to ⋯" a violation of mail or wire fraud, or a conspiracy to commit such offense, is subject to criminal forfeiture.  The government must prove by a preponderance of the evidence that the property is forfeitable pursuant to the stated standard.  U.S. v. Hasson 333 F.3d 1264 (11th Cir. 2003); U.S. v. Fifty-Nine Thousand Dollars in U.S. Currency 2006 WL 3804703 (S.D. Fla. 2006) (slip opinion).  In determining what property constitutes "proceeds" of a crime, the term proceeds is interpreted very broadly under the statute. "[T]he term 'proceeds' is defined as ... [i]n cases involving ...unlawful activities... means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 USC § 981(a)(2)(A).

B.    Government's Preliminary Motion for Forfeiture

Fed. R. Crim. P. 32.2(b) provides that:

As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government

---

[6] Defendants further contend that the forfeiture of substitute assets is only available under 18 U.S.C. § 982, and not 18 U.S.C. § 981. However, the substitute asset provision in the criminal forfeiture law is found at section 413 of the Controlled Substances Act, 21 U.S.C. § 853(p). 28 U.S.C. §2461 which the court has determined is applicable to this case states "the court shall order the forfeiture of the property in accordance with the procedures set forth in section 413 of the Controlled Substances Act (21 U.S.C. § 853), other than subsection (d) of that section." Accordingly, substitute assets can be forfeited under 18 U.S.C. § 981.

seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.

The government contends that all of the listed properties were properties obtained directly or indirectly, as the result of the commission of the offenses giving rise to forfeiture, and property traceable thereto. The government further maintains that "the basis for forfeiture can be premised upon the entire scheme to defraud as charged in the indictment and not necessarily just the amount derived from the particular acts alleged as substantive counts in the indictment." (Doc. 281 at 9-10)

The government seeks forfeiture of specific property, as well as a money judgment, against defendants Russo and Sutley. As to the property, the court's inquiry focuses on whether the government has established the requisite nexus between the property and the offense. Fed. R. Civ. P. 32.2(b). In ruling on a motion of preliminary forfeiture the court may rely on "evidence already in the record...or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt. Fed. R. Crim. P. 32.2. After hearing counsels' arguments regarding the government's motion for preliminary forfeiture and considering the same in the light of the above referenced legal framework, the court makes the following determinations:

1.    American Hot, L.L.C. Assets

*2641 West Beach Boulevard*; *Vision Bank Account (Brown); American Hot,*

The government seeks forfeiture of the American Hot house, located at 2641 West Beach

9

Boulevard, Gulf Shores, Alabama, the Visions Bank Account (formerly Account 10015728)

Number 1001131 in the name of "Jim Brown, Inc., " in the amount of $66,717.25, and

defendants, Russo and Sutley's respective interests in American Hot, L.L.C.

The evidence at trial established that Russo made no contribution to this venture and was

well aware that it was a gratuity from Brown based on Russo's demand to Brown to find a way

for Russo to make money.  The evidence further established that Russo told Brown he wanted to

include Sutley in the deal.  Although Sutley may have been unaware that he was brought into the

American Hot deal due to Russo's request to do so, the fact remains that Sutley's one-third

interest in American Hot, L.L.C, was *intended* as part of a gratuity to Russo from Brown in

furtherance of their scheme to commit honest services fraud.  Accordingly, the court finds that

the American Hot assets "constitute[] or [are]derived from proceeds traceable to...the mail and

wire fraud convictions.  Accordingly, the request to forfeit the West Beach property, the

proceeds totaling $66, 717.25 from the American Hot, L.L.C. bank account, which were

transferred to Vision Bank acct. #1001131, and the defendants' interests in American Hot,

L.L.C., is **GRANTED** as to *both* Russo and Sutley.  Brown's interest in these assets is forfeited

pursuant to the plea agreement he has made with the government.  (See Doc. 131)

*Insurance Proceeds*

The government also seeks a money judgment in the amount of $93,000 as to defendant

Russo and defendant Sutley representing the insurance proceeds received as a result of the

Hurricane Ivan damage claim to the West Beach Boulevard house.  The evidence at trial was that

Russo made no contributions toward insurance payments on the property but received a portion

of the claim proceeds.  As these monies were derived as further gratuity from Brown to Russo in

furtherance of the scheme to commit honest services fraud, the court finds that they are forfeitable as to defendant Russo.  However, the request for a money judgment of $93,000 is **DENIED** as these funds are accounted for in the forfeiture of the Crystal McDonald bank account discussed *infra*.

The court reaches a different result as to defendant Sutley.  Unlike the American Hot property and the assets of the L.L.C., the insurance proceeds as they relate to Sutley are once removed from the tainted transactions.  While the insurance proceeds were clearly gratuitous as to Russo, the evidence at trial was that Sutley paid his portion of the insurance on the property. Accordingly, the government's request for a money judgment against Sutley in the amount of $93,000.00 is **DENIED.**

2.      Lots 57 and 58 (Burkart Estates property in Orange Beach, Alabama)

The evidence at trial established that Russo paid approximately $450,000.00 for the Burkart Estates property.  The uncontested evidence was that approximately $50,000 of the purchase price came from Russo's personal account.  The evidence further established that Russo obtained the remaining $400,000.00 from proceeds traceable to the underlying  "land-flip" transaction. The land-flip transaction was shown to be yet another gratuitous act on Brown's behalf to help Russo make money and thus, part of the scheme to commit honest services fraud. Specifically, there was evidence that Brown agreed to help Russo obtain financing for the project.  Accordingly, while the request to forfeit the Burkart Estate property is **GRANTED**, only $ 400,000.00 or Eighty-Nine percent (89%) [7] , whichever is larger, of the proceeds from the sale of the Burkhart Estates property may be retained by the United States.

---

[7] This calculation incorporations any appreciation on the property.

11

3.      2004 BMW Automobile

The government failed to present the court with any authority that would allow forfeiture of the BMW where only a minority portion of the asset's worth (i.e., $10,000 payment from Brown to Russo) is traceable to proceeds that are forfeitable.  Accordingly, the government's motion for preliminary order of forfeiture as to the 2004 BMW automobile is **DENIED.**

The government also seeks a money judgment in the amount of $10,000.00  as proceeds traceable to Russo's purchase of the automobile.  The evidence at trial sufficiently established that Brown gave Russo $10,000.00 as a kickback from a city contract for debris disposal that Brown had obtained.  Russo used this money as a down payment on the BMW.  Accordingly, the government's request for money judgment against Russo in the amount of $10,000.00 is **GRANTED.**

4.      Vision Bank Account Number 20007440

The government seeks forfeiture of $95,719.01 in U.S. currency held in a bank account in the name of  Russo's wife, Crystal R. McDonald.  The evidence at trial established that $93,000.00 was transferred from Russo's account into a new account bearing only his wife's name on the day the Second Superceding Indictment was handed down. The evidence also sufficiently established that $93,000 of the money in this account was traceable to the gratuitous insurance proceeds given to Russo by Brown.  Accordingly, the request to forfeit this account is **GRANTED.**  The balance of the account may be used in partial satisfaction of the money judgments discussed *supra* and *infra.*

5.      Campaign Contributions

The government also seeks a money judgment against defendant Russo in the sum of

$11,000.00 representing campaign contributions which the evidence sufficiently established were diverted by Russo from his campaign account number 20035985 at Vision Bank to pay personal expenses.  The government's request for money judgment against Russo in the amount of

$11,000.00 is **GRANTED.**

III.     <u>**CONCLUSION**</u>

Based on the foregoing, and the authority of <u>United States v. Schesslinger</u>, the government's motion for preliminary order of forfeiture is **GRANTED, <u>in part</u> and DENIED, <u>in part</u>** as set out herein.

DONE this the <u>14th</u> day of February, 2007.

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**